## STANDARD PORTLAND CEMENT CO. v. FOLEY.*

(Circuit Court of Appeals, Fifth Circuit. January 27, 1921. Rehearing Denied February 17, 1921.)

### No. 3475.

1. **Master and servant** ⬳286(22)—**Negligence in maintaining projecting set screw question for jury.**

    Under Code Alabama 1907, § 3910, making an employer liable for injuries caused by a defect in the plant, as construed by the Supreme Court of Alabama, it was a question for the jury whether a projecting set screw on a revolving collar, near the small platform on which the employé was required to work, was a defect for which the employer was liable.

2. **Master and servant** ⬳235(4)—**Employé need not inspect for defects in place of work.**

    An employé may rely on employer to furnish him a safe place to work, and need not show that he exercised reasonable care to discover a hidden defect, consisting of projecting set screw on a revolving shaft near his working place.

3. **Appeal and error** ⬳699(2)—**Rulings on instructions not reviewable without entire charge.**

    The giving or refusal of charges cannot be assigned as error, if the transcript does not contain the charge of the court to the jury.

In Error to the District Court of the United States for the Southern Division of the Northern District of Alabama; William I. Grubb, Judge.

Action by J. R. Foley against the Standard Portland Cement Company to recover damages for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

Percy, Benners & Burr, of Birmingham, Ala., for plaintiff in error. Erle Pettus, of Birmingham, Ala., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. Defendant in error (herein called plaintiff) obtained judgment against plaintiff in error (herein called defendant) in an action to recover damages for personal injuries, alleged to be due to defendant's negligence.

Plaintiff was employed as an electrician by defendant at its cement plant. A large crane at this plant was operated by an electric motor. It became necessary for plaintiff, in the discharge of his duties, to

get upon a small elevated platform about 3 feet wide by 7 feet long in order to examine this motor, and, if necessary, to repair it. On this platform were a tool box, about 18 inches wide, 12 inches deep, and 30 inches long, and an exposed breaker coil, charged with a current of about 500 volts of electricity. A revolving steel shaft was in immediate proximity to the platform, and on this shaft at this particular point was a collar. A projecting set screw, which was unguarded and unprotected, held or fastened the collar to the shaft. The shaft was 3 inches in diameter, the collar 6 inches in diameter, and the set screw extended out from the collar from 1⅛ to 2 inches.

Plaintiff had no duty with respect to the shaft or the collar; his sole duty on this platform was in connection with the motor, which it was proper, and perhaps necessary, for him to examine while the machinery was in motion. Plaintiff worked on the motor from about 3 o'clock in the afternoon until about 9:30 the next morning, during which time he had taken it down, and had just put it back in its place, and, in order to test it, had the machinery running and the shaft revolving, and, while looking into the motor and examining it, plaintiff's right arm was caught by the set screw, wound around the shaft, and seriously injured.

There was testimony that the set screw was hidden from plaintiff's view by a gear box. Plaintiff testified that he did not know the set screw was projecting or exposed, but admitted that he knew there were set screws in the plant, and testified that some of them were countersunk or flush with the collar, while some in other parts of the building were allowed to remain exposed and projecting. It was also shown by the evidence that this particular set screw by which plaintiff was injured had been in the condition described more than four years, or ever since the crane had been installed in defendant's plant. Several witnesses testified that in well-regulated plants set screws were countersunk or made flush with the collar.

This action is based upon the Employers' Liability Act of Alabama, which provides in substance that, when a personal injury is received by an employé, the employer is liable as if the employé were a stranger, if the injury is caused by a defect in the condition of the ways, works, machinery, or plant of the employer. Section 3910, Civil Code of Alabama of 1907. The projecting set screw was the defect plaintiff relied on at the trial.

[1] Error is assigned upon the refusal of the court to direct a verdict for defendant. To sustain this assignment it is argued that a projecting set screw is not a defect, but that it merely enhances the risk of injury in an employment that is inherently dangerous. While this view seems to prevail in some jurisdictions, it has been rejected by the Supreme Court of Alabama, which, in construing the act above cited, has held that it cannot be asserted as a matter of law that an employer is not liable for injury to an employé caused by a projecting set screw on a revolving shaft, and the question of liability of the employer was properly left to the jury. Prattville Cotton Mills Co. v. McKinney, 178 Ala. 554, 59 South. 498.

The trial court allowed the jury to determine whether the projecting

set screw constituted a defect. The place of work provided for plaintiff was dangerous at best. The platform was small, a goodly portion of it was taken up by the tool box, and the breaker coil, heavily charged with electricity, further contracted the space available. It appears to us that there was evidence to support the verdict that it was negligence upon the part of the defendant to leave the set screw exposed and projecting at this point.

[2] It is further contended that defendant was entitled to a peremptory instruction in its favor, because plaintiff failed to show that he had exercised reasonable care to discover the defect complained of. Plaintiff had the right to rely upon defendant to furnish him a safe place to work, and was under no duty to make an investigation. In Texas & Pacific Railway Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, a case which originated in the then Circuit Court for the Eastern District of Texas, and which was affirmed by this court in 75 Fed. 802, 21 C. C. A. 520, the trial court was requested to charge that if the plaintiff, an employé, knew "or by the exercise of ordinary care could have known" of negligence on the part of the defendant in failing to inspect or repair railroad cars, there could be no recovery. The court gave the charge requested only after striking out the words above quoted, and the Supreme Court in approving that action said:

"The court was clearly right in striking the words from the requests. The elementary rule is that it is the duty of the employer to furnish appliances free from defects discoverable by the exercise of ordinary care, and that the employé has a right to rely upon this duty being performed, and that whilst in entering the employment he assumes the ordinary risks incident to the business, he does not assume the risk arising from the neglect of the employer to perform the positive duty owing to the employé with respect to appliances furnished. An exception to this general rule is well established, which holds that where an employé receives for use a defective appliance, and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used."

This opinion also holds that the failure to discover a defect is not chargeable to an employé, unless it is so obvious that knowledge of it may be presumed. To the same effect is Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96. In Gila Valley, Globe & Northern Railway Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521, the rule is stated as follows:

"An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employé has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employé with the assumption of the risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it."

Clearly, under these decisions, the court did not err in submitting the case to the jury.

·[3] Of the remaining assignments of error, some are based upon the refusal of requests to charge, while others challenge the correctness of charges which were given. In so far as they seek to raise questions other than those already discussed, these additional assignments are not supported by the transcript of record. It is elementary that, if the transcript does not contain the entire charge of the court to the jury, error is not well assigned upon charges given or refused. The bill of exceptions in this case does not purport to contain all of the court's charge, and therefore it is impossible to ascertain whether charges refused were elsewhere given, or whether charges given were not so qualified as to obviate the objections urged against them.

The judgment is affirmed.

## On Petition for Rehearing.

Plaintiff in error insists that the exceptions taken to the charge of the trial court complied with rule 10 of this court (150 Fed. xxvii, 79 C. C. A. xxvii). It appears that these exceptions were properly taken; but the assignments relied upon in the petition relate only to questions already considered and discussed.

A rehearing is therefore denied.