LAURA LLOYD, Adm'x v. ALBEMARLE & RALEIGH R. R. CO.

*Negligence—" Last Clear Chance" to Avoid an Accident— Intoxicated Persons on the Track—Inferences the Jury May Draw.*

1.  Where an engine is run at night with the tender in front and no headlight, and a person lying on the track is injured, if the jury find that a headlight would have enabled the engineer to see the person on the track in time to have avoided an injury, then the failure to provide a head-light and have it at the front was a continuing negligent omission of a duty, the performance of which would have afforded the last clear chance to prevent the injury, and becomes the proximate cause of such injury.

2. If a person is drunk and lying upon a railroad track, such neg-
ligence is not deemed the proximate cause of an injury sus-
tained from a moving train, if the engineer, by the exercise
of ordinary care, could have seen him in time to have pre-
vented the injury by the proper use of the appliances at his
command.

3. It is competent for the jury to be guided by their own reason,
experience and observation in such questions as within what
distance and period of time a moving train can be stopped,
or how far an engineer can see an object on the track with
or without a head-light. It is idle to offer witnesses to con-
clude either courts or juries from inquiring whether a head-
light helps an engineer to see or prevents his seeing.

4. The rule, established by *Pickett* v. *R. R.*, 117 N. C., 616, and
cases that have followed at this Term, with reference to the
" last clear chance " to avoid an injury, affirmed.

CIVIL ACTION, tried before *Boykin, J.*, at October Term,
1895, of EDGECOMBE Superior Court.

Verdict and judgment for the plaintiff; defendant
appealed.

*Messrs. Don Gilliam* and *J. H. Blount*, for plaintiffs.
*Messrs. J. L. Bridgers*, for defendant (appellant).

AVERY, J.: The plaintiff's intestate was killed in the
night by an engine running with tender in front at a speed
of about 25 miles an hour and carrying a train of cars.
He was on the end of a trestle when stricken. The only
light used on the tender was a small hand-lantern, which
was held by a man placed on the tender for that purpose.
This presents the question so fully discussed in *Pickett* v.
*Railroad*, 117 N. C., 616, and cases that have followed at
this Term. Notwithstanding the negligence of the plaint-
iff's intestate in exposing himself to danger, could the
defendant, by subsequently avoiding some careless act or
negligent omission of duty, have prevented the collision
with its serious consequences ? The engine could not have

been turned around without the use of a turn-table, and under the circumstances it is not probable that, by keeping the most vigilant outlook, with the small lantern on the tender, the defendant could have seen the intestate in time to stop the train before it came in contact with him —if we suppose that he was lying prostrate upon the track and apparently helpless. The court carefully instructed the jury that, if the engineer or watchman actually saw the intestate walking upon the track, apparently in possession of all his powers and faculties, either was warranted in acting on the assumption that he would step off before the train reached him, unless he was seen upon a trestle with all of the peril incident to such a situation. *Clark* v. *Railroad*, 109 N. C., 430. We may assume that, acting upon the instruction given, the jury concluded that, by the exercise of proper care, the defendant's servants might have seen the intestate in time to prevent the collision, and that, if seen, he would have appeared to them to be prone upon the track or in peril on the trestle. The point involved may be discussed upon the supposition that the jury did not believe, from the testimony, that the deceased was walking upon the track beyond the trestle when he was seen, or could by a proper outlook have been seen. But it was negligence on the part of the defendant to run its engine after night, rear in front, without such a light, for two reasons. First, because by its aid the intestate might possibly have been seen in time to stop the train and avert the accident; and, secondly, because every person who used the track as a footway under the implied license of the defendant, had reasonable ground to expect that such care would be exercised and to feel secure in acting upon that supposition. But a witness was introduced who testified that the engineer, with the aid of a head-light, could not, under any circumstances, have seen a

person on the track in his front in time to have stopped the train before coming in collision with him. This was an opinion which the jury were not obliged to accept as conclusive. How far the engineer ought to have been able to see in front by means of a good head-light is a question (like determining within what distance a train can be stopped under given circumstances) the solution of which depends upon the exercise of good common sense and the use of knowledge acquired by observation and experience. *Deans* v. *Railroad*, 107 N. C., 686, and authorities there cited. Both inquiries were involved in passing upon the issues, and the jury were at liberty to take notice of such matters of general knowledge as are involved in the determination of the question whether a head-light in front would have enabled the engineer to see the injured person in time, by the use of the appliances at his command, to have prevented the accident. If the jury found that a head-light would have enabled the defendant, by due diligence on the part of its servant, to have seen the intestate in time to have stopped the train before reaching him, then the failure to provide one and have it at the front was a continuing negligent omission of duty, the performance of which would have given the defendant the last clear chance to prevent the injury, and therefore have made its negligence the proximate cause of it. *Pickett* v. *Railroad*, *supra*. The omission of duty consisted in running and continuing to run the train without proper light in front. After the intestate went upon the track, and possibly fell asleep there, the defendant's servants, seeing it was dark, might have stopped the train upon the track and waited till morning before moving on towards Tarboro. A still safer course would have been to have run back to a turn-table and placed the head-light in front before starting. It is idle to offer witnesses to

conclude either courts or juries from inquiring whether a
head-light helps an engineer to see or so blinds him as
totally to prevent his seeing.   If there were any founda-
tion for the defendant's contention on this point, it might
be questionable whether the warning to persons in the
front would not be given at too great a cost, if enabling
them to see rendered it impossible to avert injury by keep-
ing an outlook from the engine.   In refusing to desist
from running in such a manner after night, the defendant's
servants voluntarily incurred such risk every moment as
the jury found due to the failure to move with the head-
light in front.   This case is easily distinguishable from
*Styles* v. *Railroad*, decided at this Term.   There the judge,
in effect, told the jury that the failure to remove earth,
which had been allowed negligently to accumulate before
the plaintiff attempted to escape danger from a passing
train by going upon it, was the proximate cause of the injury.
The negligence in the case at bar consisted in running with-
out a head-light, if by its use the train might have been
stopped after the injured party exposed himself.   The leav-
ing of the earth unmoved was a fact accomplished before the
plaintiff, Styles, attempted to take refuge upo.. it.   It could
not have been taken away then in time to avert the injury.
In the case at bar it was a question for the jury whether,
after the plaintiff's intestate had exposed himself to danger,
the defendant's servants might, by the use of a head-light,
have seen him in time to have stopped the engine and averted
the accident, and the court properly left the jury to deter-
mine it.   It is now settled law in this State (*Pickett* v.
*Railroad*, *supra*) that, notwithstanding the fact that a per-
son who is lying insensible upon a railway track is drunk,
his negligence is not deemed concurrent, w ere the com-
pany's servants, by the exercise of ordinary care, could have
seen him in time to have prevented the injury by the proper

use of the appliances at their command.    The fact that the
court below adhered to this view of the law before *Smith
v. Railroad*, 114 N. C., 728, had been overruled cannot be
assigned as error, now that the later ruling of the Court sus-
tains theposition of the trial judge.    The charge is long,
but a careful view of it discloses no such inconsistency as
was calculated to mislead the jury.    The inference, which
must be drawn from the finding in the light of the instruc-
tion given, is that the jury believed that with a head-light
the engineer could, by due diligence, have discovered that
the plaint-iff's intestate was lying helpless upon the track
in time to have stopped the train before coming in contact
with him.    For the reasons given, the judgment is affirmed.

Affirmed.