**Albert C. FROST, Hugh C. Frost, Appellants,**

v.

**Cooper P. BENEDICT, Betsy Ann Siegeltuch, Appellees.**

**No. 17984.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 20, 1963.

Decided March 12, 1964.

Petition for Rehearing Denied April 13, 1964.

Mr. Jeremiah C. Collins, Washington, D. C., with whom Mr. Frank F. Roberson, Washington, D. C., was on the brief, for appellants.

Mr. Ralph H. Deckelbaum, Washington, D. C., with whom Messrs. Bernard Margolius and Ben Greenspoon, Washington, D. C., were on the brief, for appellees.

Before FAHY, BURGER and McGOWAN, Circuit Judges.

PER CURIAM:

This appeal arises out of an automobile collision at an intersection of two streets, one of which is an arterial highway. Appellant urges that it was error for the District Court to give the so-called last clear chance instruction.

Appellee Betsy Ann Siegeltuch, a young woman of 24, was driving her

regular route home from her daily work when her car was struck by appellant Frost's car as she drove a car owned by appellee Benedict across an arterial highway. Her injuries left her with an amnesia so that at trial she had no recollection of any events concerning the collision.

Appellant Frost, also age 24, was driving on the arterial street; he testified that when he was approximately 100 feet from the intersection he first observed Miss Siegeltuch approaching the intersection; she was also approximately 100 feet from the intersection. Appellant and two of the passengers in his car testified that Miss Siegeltuch drove through the arterial street without stopping at or near the usual "STOP" sign which controls entry to the highway.

Frost's testimony, which is uncontradicted, was that when he was about 50 feet from the intersection [1] he became aware that appellee's car was not slowing down to stop at the arterial "STOP" sign, that he then applied his brakes but struck appellee's car as it crossed the intersection without having stopped. The evidence showed that he applied his brakes but slid approximately 35 feet on the damp or wet pavement into appellee's car, which traveled 39 feet after the collision. Frost's car traveled 24 to 27 feet after impact.

Another motorist who was approaching the arterial street from a point opposite Miss Siegeltuch acknowledged that "it would be fair to say" that she "shot out into the intersection." [2] This witness qualified his testimony by saying he did not actually observe appellee

"run" the "STOP" sign but taken as a whole a jury could reasonably find that the testimony of this independent eyewitness supported appellant's version of the collision that Miss Siegeltuch had failed to stop as required.

■■ In the circumstances revealed by this record, an instruction on last clear chance was not appropriate, for at best the jury would be obliged to speculate on what alternative courses were available to Frost in the time available to avoid the collision. There is no evidence in the case that appellant was aware or "should reasonably have been aware of [appellee's] danger and could have taken the proper precautions to avoid injury * * *." Richardson v. Gregory, 108 U.S.App.D.C. 263, 265, 281 F.2d 626, 628 (1960). Frost had a right to assume appellee would stop at the arterial "STOP" sign. We can assume for these purposes that a jury could reasonably find negligence on the part of Frost, but we find no evidence that Frost in the exercise of due care could have done other than what he did when he became aware that Miss Siegeltuch had placed herself in a position of peril. Appellee did not meet her burden on this score simply by suggesting speculative alternatives. The last clear chance doctrine, as its name implies, has to do with not merely the *last* chance to avoid injury but a *clear* chance as well. Compare Capital Transit Co. v. Garcia, 90 U.S.App. D.C. 168, 194 F.2d 162 (1952).

■ The jury returned a special verdict here finding that Miss Siegeltuch "was negligent and that her negligence proximately concurred in [some] degree

1. Frost testified that he was driving 25 m. p. h. when he first appreciated plaintiff's danger; the police officer from the Accident Investigation Unit testified that at the scene shortly after the collision Frost had given him the same information; two of the three passengers in Frost's car estimated their speed at 25 m. p. h. also; the third passenger was never questioned as to the speed of the Frost vehicle. Appellee's expert witness on the basis of the skid marks estimated that Frost's speed

when he applied his brakes was at least 34 m. p. h. An eyewitness judged Frost's speed to be about 30 m. p. h. The posted speed limit was 25 m. p. h.

2. This witness characterized appellee's action saying it appeared to him that she did not see appellant's approaching car, which the witness "had no difficulty seeing" and because "she [appellee] was looking straight ahead as she went across the intersection. * * *"

in causing the impact and her resulting injuries * * *." Her negligence having been found contributory, she cannot recover.

Reversed.